IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| CONSUMER PORTFOLIO SERVICES, INC., | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | 04-G-3361-W |
| DELMAR COLEMAN, | ) ) | |
| Appellee. | ) ) | |

CONSOLIDATED WITH

| | | |
|---|---|---|
| CONSUMER PORTFOLIO SERVICES, INC., | ) ) ) | |
| Appellant, | ) ) | |
| v. | ) ) | 04-G-3362-W |
| DELMAR COLEMAN, | ) ) | |
| Appellee. | ) ) | |

MEMORANDUM OPINION

These consolidated cases are before this court on appeal from a final order of
the United States Bankruptcy Court for the Northern District of Alabama, Western
Division.  In the interest of judicial economy, these cases have been consolidated by
prior order.

JURISDICTION

Case 04-G-3361-W arises out of a case which was removed from state court by
Consumer Portfolio Services, Inc., (hereinafter CPS) to the Bankruptcy Court.  The
Bankruptcy Court granted appellee Delmar Coleman's motion to remand the case to

state court (hereinafter the Removed Case).  Jurisdiction for appeal of that final order exists under 28 U.S.C. § 158(a).

Case 04-G-3362-W arises out of the initial bankruptcy proceeding and an independent Adversary Proceeding related to the Removed Case(hereinafter the Adversary Proceeding).  By the Adversary Proceeding, CPS seeks, *inter alia,* a declaratory judgment declaring Ms. Coleman's claims in the Removed Case barred as a matter of law by CPS's prior adjudicatory defenses and an injunction to prevent Ms. Coleman from pursuing her state claim against CPS.  The Bankruptcy Court dismissed this Adversary Proceeding *sua sponte* at the same time it remanded the Removed Case.  App. R.,  doc. 8.  Jurisdiction for appeal of that portion of the final order exists under 28 U.S.C. § 158(a).

## STANDARD OF REVIEW

This court functions as an appellate court for the decisions of the United States Bankruptcy Courts.  *In re Sublett*, 895 F.2d 1381, 1383 (11th Cir. 1990).  No factual findings of the Bankruptcy Court are at issue in this appeal.  The issues presented for review are questions of law–whether the Removed Case was properly remanded to state court because of lack of jurisdiction and whether the independent Adversary Proceeding was properly dismissed *sua sponte* because of lack of jurisdiction.  This court reviews the legal conclusions of the Bankruptcy Court *de novo*.  *In re Simmons*, 200 F.3d 738, 741 (11th Cir. 2000).

<u>PROCEDURAL HISTORY</u>

The seminal action giving rise to these appeals is a Chapter 13 bankruptcy proceeding filed by Delmar Coleman on February 15, 2001.  Under the Confirmation Order in that case, CPS was allowed to repossess and liquidate Ms. Coleman's Oldsmobile Cutlass and to file a deficiency claim upon its liquidation.  The bankruptcy action ended in discharge with Ms. Coleman having made all of the payments required under the Confirmation Order but not having fully satisfied her creditors.

Two days later Ms. Coleman filed a state court action alleging CPS had violated Section 7-9-614 of the Code of Alabama (Article 9 § 614 of the Uniform Commercial Code) in the course of the repossession and sale of the Cutlass.  CPS removed the action to the Bankruptcy Court and filed an independent adversary proceeding for declaratory judgment and to enjoin Ms. Coleman from pursuing the action in state court.  Upon motion to remand by Ms. Coleman, the Bankruptcy Court remanded the case to state court.  The Bankruptcy Court *sua sponte*, without motion by Ms. Coleman or notice to CPS or opportunity for CPS to be heard in any manner, dismissed the adversary proceeding.  This appeal followed.

<u>FACTS</u>

In 1997, Ms. Coleman purchased a 1994 Oldsmobile Cutlass under a retail installment contract which was assigned to Consumer Portfolio Services, Inc.  CPS is a consumer finance company that purchases, sells, and services retail automobile installment contracts originated by licensed motor vehicle dealers.  Ms. Coleman filed for bankruptcy on February 15, 2001, at which time she still possessed the Cutlass, and CPS held a secured interest in the amount of $7,500.00.  This secured claim was listed

on Ms. Coleman's bankruptcy liability schedule.  Ms. Coleman, however, listed no cause of action, present or potential, against CPS on her asset schedule.

The bankruptcy proceeding continued apace.  The Plan was approved, and the Cutlass was ultimately repossessed and liquidated under the terms of the Confirmation Order.  The Order specifically stated: "**Debtor proposes** to surrender collateral of 1994 Oldsmobile Cutlass to CPS, Inc., and the Court approves this proposal; CPS, Inc., is GRANTED relief from automatic stay to repossess or accept surrender and liquidate said collateral. . . ." Order of Confirmation and Order For Payment of Filing Fee in Installments, Appeal Record doc. 6, p. 1 (emphasis added).  The record shows no indication that Ms. Coleman made any objection to the repossession or sale, and the record on its face indicates that she had knowledge and had herself proposed a surrender of the property or repossession and liquidation.  Ms. Coleman made her Plan payments and received her discharge pursuant to 11 U.S.C. § 1328 on March 12, 2004. The trustee filed his report, and the case was closed administratively on June 1, 2004.

On June 3, 2004, Ms. Coleman filed a civil suit in state court against CPS alleging violation of Section 7-9-614 of the Code of Alabama (Article 9 § 614 of the Uniform Commercial Code) and seeking the statutory relief provided under Section 7-9-625 of the Alabama Code.  The Complaint specifically alleges:

> The form used by the Defendant [CPS] violates the requirements of §7-9-614 in that they, *inter alia,* provide inaccurate, incomplete and/or ambiguous information regarding debtors' rights in the collateral following repossession.

-4-

Appeal Record, § C 1, Class action Complaint, p. 6, ¶ 27.  Ms. Coleman is named as

the lead plaintiff.  The collateral referred to in the Complaint is the Oldsmobile Cutlass

repossessed and liquidated in the bankruptcy.

## ISSUE and HOLDING

The Bankruptcy Court remanded the Removed Case and dismissed the

Adversary Proceeding on a finding of lack of jurisdiction.  The issue before this court is

whether the Bankruptcy Court has jurisdiction over the Removed Case  and the

Adversary Proceeding.  This court finds that the Bankruptcy Court has jurisdiction over

both the Removed Case and the Adversary Proceeding.  The Bankruptcy Court's

decisions were based on an error of law and are due to be reversed.

## FINDINGS

Original jurisdiction is conferred upon federal district courts over cases "arising

under Title 11, or arising in or related to cases under Title 11" by 28 U.S.C. § 1334(b).

Bankruptcy courts are granted jurisdiction by reference from the district courts.  The

Eleventh Circuit has adopted the *Pacor* test for determining whether a civil proceeding

is "related to" a bankruptcy case for jurisdictional purposes.  That test is:

> whether the outcome of the proceeding could <u>conceivably</u> have an effect
> on the estate being administered in bankruptcy.  The proceeding need not
> necessarily be against the debtor or against the debtor's property.  An
> action is related to bankruptcy if the outcome could alter the debtor's
> rights, liabilities, options, or freedom of action (either positively or
> negatively) and which <u>in any way impacts</u> upon the handling and
> administration of the bankrupt estate.

*In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990)(emphasis added)(*quoting*

*Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir. 1984)).  The Eleventh Circuit Court of

Appeals has found that the term *conceivable* creates an extremely broad field of

"related to" jurisdiction regarding adversary proceedings.  *In re Toledo,* 170 F.3d 1340, 1345 (1999).

By its Adversary Proceeding, CPS seeks, *inter alia,* a declaratory judgment that requires a finding of when the Removed Case cause of action arose--pre-petition, during the pendency of the bankruptcy action, or after the close of the bankruptcy case. The Bankruptcy Court must make this determination.  This finding will determine whether Ms. Coleman (the debtor from the original Title 11/Chapter 13 bankruptcy case) has standing to sue in the Removed Case, which court will hear the case, who owns the cause of action, and who would collect the proceeds of any potential recovery. Because the cause may be precluded by the Bankruptcy Court's previous Confirmation Order, the estate may be the owner of the action, and unsatisfied creditors may be recipients of the recovery proceeds, the court finds that both the Adversary Proceeding and the Removed Case are related to Ms. Coleman's bankruptcy action, and jurisdiction exists under 28 U.S.C. § 1334(b).

Further grounds for jurisdiction exist as well.  All courts, including bankruptcy courts, retain jurisdiction to enforce their own orders and judgments.  The Bankruptcy Court retains jurisdiction to construe and enforce its own orders from prior core proceedings and should do so.  11 U.S.C. § 105(a);[1] 28 U.S.C. § 1334(b); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266-67 (3d Cir. 1991);[2] *In re Tippins,* 221 B.R. 11,

---

[1] 11 U.S.C. § 105(a) states: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

[2] This case and some others cited have to do with Chapter 11 bankruptcies.  This fact does not affect the applicability of the principles cited because either applicable statutes pertain to both types of bankruptcies or statutes with analogous provisions exist.

15 (N.D. Ala. 1998). As a New York bankruptcy court stated, "[I]t is well settled that the 'bankruptcy court is undoubtedly the best qualified to interpret and enforce its own orders. . . .'" *In re U.S.H. Corp.,* 280 B.R. 330, 335 (Bankr. S.D.N.Y. 2002)(quoting *In re Texaco*, *Inc.*, 182 B.R. 937, 947 (Bankr. S.D.N.Y. 1995).

By its Adversary Proceeding, CPS also seeks a clarification of the Bankruptcy Court's prior Confirmation Order. CPS seeks in essence a definition of its rights as Ms. Coleman's creditor regarding the repossession and liquidation process that was followed as a result of the bankruptcy proceeding–whether CPS is subject to suit arising from the notice given regarding the repossession and liquidation of Ms. Coleman's 1994 Cutlass. This repossession and liquidation were part of the Confirmation Order. Controversy exists as to the effect of Ms. Coleman's failure to list her cause of action or potential cause of action against CPS in her schedule of assets. The effect of that failure on the Confirmation Order is for the Bankruptcy Court to determine. The Bankruptcy Court retains jurisdiction to construe and enforce its own orders from prior core proceedings. 11 U.S.C. § 105(a); 28 U.S.C. § 1334(b); *In re Tippins,* 221 B.R. 11, 15 (N.D. Ala. 1998); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266-67 (3d Cir. 1991).

This Adversary Proceeding goes directly to the boundaries of the debtor-creditor relationship–the very heart of the bankruptcy proceeding. More specifically, the Adversary Proceeding goes to the debtor-creditor relationship regarding a specific asset subject to a secured claim and an unsecured deficiency claim, neither of which were fully satisfied. The Bankruptcy Court through its Confirmation Order initially created the

sphere within which this debtor and creditor could exercise their rights as to this asset. By the Adversary Proceeding, that court has been asked to brighten the outline of the circle it drew with its Confirmation Order by determining whether Ms. Coleman's Removed Case falls within or without that circle.

Ms. Coleman's Plan, as confirmed, makes no mention of the right of any legal action, present or potential, against CPS. Because no right or potential right to sue was listed, CPS seeks a declaration from the Bankruptcy Court that the Confirmation Order fixed the relations between Ms. Coleman and her creditors as to the bankruptcy estate's assets and that Ms. Coleman's suit against CPS is thereby prohibited. Under the law, a confirmed plan encompasses the entire debtor-creditor relationship as to assets and claims arising involving those assets. 11 U.S.C. § 1327*; In re Marlow,* 216 B.R. 975 (Bankr. N.D. Ala. 1998); *In re Roper,* 203 B.R. 326, 333 (N.D. Ala. 1996); *In re Duke,* 153 B.R. 913 (Bankr. N.D. Ala. 1993); *see also, Sure-Snap Corp. v. State Street Bank and Trust Co.*, 948 F.2d 869, 874-75 (2d Cir. 1991).[3] A confirmed Chapter 13 plan fixes the rights, duties, and relationships of all parties who participate in the confirmation process.[4] 11 U.S.C. § 1327*; In re Marlow,* 216 B.R. 975 (Bankr. N.D. Ala. 1998); *In re Roper*, 203 B.R. 326, 333 (N.D. Ala. 1996). CPS seeks a delineation of the boundaries

---

[3] The binding effect of confirmation orders under Chapter 11 is provided by 11 U.S.C. § 1141(a) and for Chapter 13 by U.S.C. § 1327.

[4] The Confirmation Order has a res judicata or claim preclusive effect if certain elements are present. *In re Justice Oaks II, Ltd.*, 898 F.2d 1544 (11th Cir.1990), *cert. denied,* 498 U.S. 959 (1990); *In re Tippins,* 221 B.R. 11, 15 (N.D. Ala. 1998); *In re Marlow,* 216 B.R. 975 (Bankr. N.D. Ala. 1998)**.** As with the cases cited regarding the binding effect of the confirmation orders, some of the cases cited regarding the *res judicata* effect of the confirmation orders may deal with Chapter 11 bankruptcies. Again, this fact does not destroy their applicability to the instant case. Whether *res judicata* attaches does not hinge on which chapter the bankruptcy has been brought but on whether the required elements for *res judicata* are present. This issue is for decision by the Bankruptcy Court.

drawn by the Confirmation Order.  The Bankruptcy Court has jurisdiction to make this determination.  11 U.S.C. § 105(a); 28 U.S.C. § 1334(b); *In re Tippins,* 221 B.R. 11, 15 (N.D. Ala. 1998); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266-67 (3d Cir. 1991).  An asset's presence in a bankruptcy estate does not place it forever under the jurisdiction of the bankruptcy court.  *In re Lemco Gypsum, Inc.,* 910 F.2d 784, 788 (11th Cir. 1990).  However, all matters having to do with the repossession and liquidation of Ms. Coleman's 1994 Cutlass are related to the bankruptcy.  The Removed Case springs from these issues and are related to the bankruptcy.  Determining the viability of Ms. Coleman's Removed Case is what is asked for in the declaratory judgment portion of the Adversary Proceeding, so the Adversary Proceeding is therefore within the Bankruptcy Court's jurisdiction.  11 U.S.C. § 105(a); 28 U.S.C. § 1334(b); *In re Tippins,* 221 B.R. 11, 15 (N.D. Ala. 1998); *In re Marcus Hook Dev. Park, Inc.,* 943 F.2d 261, 266-67 (3d Cir. 1991).

CPS further seeks by its Adversary Proceeding to have the Bankruptcy Court issue an injunction prohibiting Ms. Coleman from pursuing her suit against CPS in state court.  If the Bankruptcy Court finds that the Removed Case is precluded by the Confirmation Order, the Bankruptcy Court has the power to issue such an injunction under an exception to the Anti-Injunction Act.  This exception allows the court to enjoin proceedings in a state court to "protect or effectuate its judgments."  28 U.S.C. § 2283; 11 U.S.C. § 105; *In re All American of Ashburn, Inc.,* 805 F.2d 1515 (11th Cir. 1986); *In re Tippins,* 221 B.R. 11, 27-29 (N.D. Ala. 1998);  *see, Bank of Heflin v. Miles,* 621 F.2d 108 (5th Cir. 1980)(affirming this court's issuance of a permanent injunction enjoining

the enforcement of a judgment issued by the Alabama Supreme Court and nullifying all Alabama state court orders in conflict with the federal district court's order).

Ms. Coleman's original bankruptcy proceeding was a core proceeding; the Confirmation Order was issued as part of that proceeding; and the sale of the Cutlass was part of the Plan confirmed in the Confirmation Order.  Accordingly, the Bankruptcy Court has jurisdiction to enforce and construe anything to do with that sale of the Cutlass.  Ms. Coleman's state action (the Removed Case) is based on an alleged defect in the notice given by CPS regarding the repossession and liquidation of a listed bankruptcy asset, the right of action was not listed on her schedule of assets, and CPS alleges it was wrongly omitted.  All of these issues are tied to the Confirmation Order. The Bankruptcy Court, therefore, has jurisdiction over Ms. Coleman's Removed Case under 11 U.S.C. § 105(a) and 28 U.S.C. § 1334(b).  Factual questions as well as legal questions will have to be decided by the Bankruptcy Court.  Among the more critical questions are when did the cause arise and, if the suit is viable, to whom does it belong. These questions, among others, will determine the ultimate fate of the Removed Case.

If the Bankruptcy Court finds that the Removed Case is precluded by the Confirmation Order then no claim may be brought in any court, and the Bankruptcy Court has the jurisdiction to dismiss the Removed Case and to issue an injunction barring its being brought in state court.  If, however, the Bankruptcy Court finds that the Removed Case is not precluded by the Confirmation Order then the Bankruptcy Court must deal with the issue of remand.

The order remanding the Removed Case to state court is due to be reversed, bringing the case back to the Bankruptcy Court where it should remain pending until the

Adversary Proceeding is adjudicated.  Further, the order dismissing the Adversary

Proceeding is due to be reversed and the proceeding reinstated with opportunity for all

parties to be heard.  A separate order in conformity with this opinion will be entered.

      DONE and ORDERED this day, March 16, 2006.


                               UNITED STATES DISTRICT JUDGE
                                     J. FOY GUIN, JR.